Misty D. Wilks, SBN 196327
WILKSLAW
3818 Crenshaw Boulevard #445
Los Angeles, CA 90008
(202) 276-4789 Voice,
(877) 264-8779 Fax
Misty@WilksLawOffice.com

Attorney for Debtor

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES

In Re:

SHELLI D. CROSS

    Debtor

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Chapter 13
Case No. **2:19-bk-19520-NB**

OBJECTION TO CLAIM; MOTION TO DISALLOW CLAIM NO. 6 OF CUT IT UP, MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF SHELLI CROSS IN SUPPORT THEREOF

CONFIRMATION HEARING: APRIL 30, 2020

**MOTION TO DISALLOW PROOF OF CLAIM NO. 6**

**OBJECTION TO CLAIM**

    The debtor, Shelli Cross ("Debtor") filed this case on August 14, 2019.

    On March 18, 2020, Marc Stevan Leonard dba Cut It Up Ent, filed an Amended Proof of Claim for $23,580.32 after filing and initial claim for $34726.49 on October 8, 2019.

    A true and correct copy of the Proof of Claim is attached as Exhibit "A" and is incorporated herein by this reference. The Proof of Claim reflects that the claim is secured and the basis for the claim is a "mechanic's lien based on labor and materials per direct contract"; however, no information to support the basis for the claim is provided.

# MEMORANDUM OF POINTS AND AUTHORITIES

I.  STATEMENT OF FACTS

The following facts are supported by Debtor's Declaration ( Exhibit "B").

Creditor is an insider insofar as he shares a familial relationship with the Debtor.  In 2016, Creditor convinced Debtor to forego another contractor and to use him as the contractor pursuant to an insurance claim after a flood at Debtor's residence.  Debtor promised that he would expedite the remodel and be finished in sixty days, (Debtor's primary concern insofar as she was a student struggling to pay both her mortgage and for the necessary  temporary housing), and 'throw in some extras' for the same amount as the insurance company agreed to pay ($28,000).  Debtor agreed to pay an additional two thousand thirty two dollars ($2,032) for upgraded fixtures.

Creditor agreed to be paid by Kinecta (Debtor's mortgagee) in four payments representing the amount of work that passed **successful inspection** by Kinecta's inspector.  After Creditor completed 25% of the work, Kinecta's inspector would come out and if the work passed inspection the mortgage company would then release 25% of the funds.  This was to happen four times until the work was complete.  Creditor was paid twice according to that arrangement before Creditor stopped showing up to work.  Creditor had only done approximately 50% of the required work (although it was later determined to be faulty work - not up to code), and he received approximately 50% of the fee to be paid by Debtor's homeowners' insurance company ("SafeCo") via Kinecta.  Creditor was never paid anymore because he never successfully performed anymore work.

Both SafeCo  and Debtor reached out to Creditor numerous times between March and July 2017 to get Creditor to perform the work .  Initially, Creditor promised to be finished by Christmas December 2016. Then he promised January 22, 2017 (60 days from start) and on and on.  After several months, Debtor  was forced to move back into the uninhabitable home and to sleep on the floor while the home was in major disrepair.  In May Debtor began hiring other Contractors to perform the work shown on the 'invoices' submitted by Creditor (that he never did). (Compare Creditors claim Exhibit A p. 26-32 with Exhibit   After two months of living in deplorable conditions (including lack of heat)  affecting Debtor's health, she finally asked Creditor to remove his tools from her home as it was clear he had no intention of finishing the work.

Eventually, Kinecta and/or SafeCo and the City of Carson inspector suggested that Debtor report Creditor to the California Contractors State License Board (CSLB) for "non-performance".  The CSLB ultimately found that Creditor abandoned the project and he was cited and fined. (Exhibit C).

There were several failed inspections noted by the City of Carson's CSLB's and Kinecta's inspectors and countless delays. (Shown in part in Ex C).   In June 2017 - 5 months after the promised completion date, with no more than 50% of the work being done - Debtor gave Creditor written notice that he was to remove all his belongings within 14 days so she could hire someone to finish the work.  Creditor again promised to have all the work done by the end of the month.  On July 3rd, 2017 Debtor asked Creditor to remove all his tools and equipment from her house.  Debtor estimates that during the 180 days between January and July 2017, Creditor showed up to work 40 days or less.

    Ten days after asking Creditor to leave her home, Debtor received the documents titled 'Invoice' with the numbers 2706 and 2710 (Ex A pp 26-32). Debtor had never seen either document before July 2017 and did not agree to anything contained therein. She contends they were created after the fact. Five days after receiving the new 'invoice' the City of Carson notified Debtor that she'd failed yet another inspection. A few days after that Debtor received an estimate from Triplett for more than eight thousand dollars ($8,000) just to redo and bring Creditor's work up to code. See Triplett estimate - Exhibit D. The cost of repairing Creditor's work put Debtor over the insurance claim budget. In severe financial distress and unable to complete all the necessary repairs, Debtor decided to sell her home. Shortly after she placed the For Sale sign in the yard - she received an email from Creditor stating that it had recorded a mechanic's lien on her home. She was never officially served (despite claims to the contrary) but the title search revealed the lien and Debtor felt that she had no choice but to cancel the sale of her home to avoid paying Creditor's bogus claim.

    Sick, hurt, hungry, poor, cold, torn and unable to resolve this matter amicably within the family, Debtor followed up on the suggestions to contact CLSB. In December 2017, CLSB recommended their fast, free, fair arbitration; Creditor refused to participate. Later, Attorney Kovalsky inappropriately tried to have the matter closed. One December 23, 2017 Attorney Kovalsky personally served Debtor with the Complaint referenced herein. For the first time, Debtor did not spend Christmas with her family.

    II.    LEGAL STANDARD AND DISCUSSION

    A.    Creditor's ("Cut It Up") CLAIM SHOULD BE DISALLOWED BECAUSE DEBTOR BEARS NO OBLIGATION THERETO

    Here, the subject proof of claim should not be considered to be valid because no information required under FRBP 3001(c) or any other law, regulation, code, or custom, was provided.

    Pursuant to 11 U.S.C. § 502(a), a filed proof of claim is deemed allowed unless a party in interest objects. The evidentiary effect of a proof of claim is set forth in Rule 3001(f) of the Federal Rules of Bankruptcy Procedure. Rule 3001(f) provides that a proof of claim that has been ***properly filed*** by the claimant is entitled to prima facie validity (emphasis added). Initially, the burden of proof lies on the claimant; ***if the claimant supports his claim with sufficient facts or documentation***, the claim is deemed *prima facie* valid (emphasis added). In re Allegheny Int'l, Inc., 954 F.2d 167, 173–74 (3d Cir. 1992); Lampe v. Lampe, 665 F.3d 506, 514 (3d Cir. 2011). The burden then shifts to the objector to produce evidence sufficient to negate the *prima facie* validity of the claim. *Id.* But, the claimant is only entitled to have the claim considered "prima facie valid" if the claimant alleges facts sufficient to support the claim. In re Allegheny Int'l, Inc., 954 F.2d 167,173 3rd Cir. 1992).

    The presumption of prima facie validity has a condition - "***if the claimant supports his claim with sufficient facts or documentation; "if the claim has been properly filed etc.*** provided in Bankruptcy Rule 3001(f). This claim was improperly filed and does not present sufficient facts or documentation. The failure to allege facts and to provide sufficient support for a claim deprives the claim of *prima facie* validity. *See, e.g., In re Jorczak*, 314 B.R. 474, 481-82 (Bankr. D. Conn. 2004) (discussing the evidentiary requirements and burden of proof with respect to the allowance of claims). The burden only shifts to Debtor *after* claimant provides sufficient evidence that some sort of claim exists.

Even with the nation-wide litigation of these issues and the Congressional amendments - and although Congress may not have wanted to make the claims process unnecessarily burdensome - it did not intend to loosen the requirements for successful claims. *See Committee Notes on Rules—2011 Amendment* Committee Notes on Rules, regarding Fed. R. Bankr. P. 3001. In fact, Fed. R. Bankr. P. 3001 was amended to require additional information - particularly, when like now, the debtor is an individual. The burden of persuasion is always on the claimant to establish his entitlement to the claim. In re Holm, 931 F.2d 620, 623 (9th Cir. BAP 1991); In re Vernon Sand & Gravel, Inc., 93 B.R. 580 (Bankr. N.D. Ohio 1988); In re Twinton Properties Partnership, 44 B.R. 420 (Bankr. Tenn. 1984); In re Ousley, 2 B.R. 278 (S.D. Ohio 1988); Kham & Nates Shoes No. 2, Inc. v. First Bank of Whiting, 7 B.R. 420, 424 (Bankr. N.D. Ill. 1989) (claimant bears burden of persuasion by preponderance of evidence.

Here - Creditor provides nothing sufficient to establish a prima facie validity. Claimant only provides poor hard to read copies of Debtor's interrogatories disputing the claim, Debtor's letter delineating Creditor's bad acts and failure to perform, and fraudulently drafted "invoices" created after the fact to pursue a frivolous lawsuit. There is no declaration, no contract, no emails or texts showing any clear obligation or commitment of any sort on Debtor's behalf.

There is no "writing" as required by Rule 3001(c). There is no contract for this supposed debt as required and taught to every first year law student for transactions of this type and amount, and required by every law in the State of California including those specifically applicable to general contractors and for a mechanic's lien. This is also problematic for Creditor because Section 502(b)(1) of the Bankruptcy Code further provides, in part, that a claim may not be allowed to the extent that it "is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1).

All established contract law would require a written and executed contract for a real property remodel of more than $30,000 that created a lien. Creditor is licensed through the California Contractors State License Board. No complex legal analysis of contract law is required for the CLSB website clearly shows

> In California, a written contract is required for all home improvement projects over $500. A home improvement contract and any changes made to that contract must be in writing, legible, easy to understand, and inform the consumer of his/her rights to cancel or rescind the contract. If you are promised something verbally make sure that it is included in writing.

https://www.cslb.ca.gov/Consumers/Hire_A_Contractor/Home_Improvement_Contracts/What_Is_A_Contract.aspx

The California Contractors State License Board found that Creditor committed no less than 3 dozen failures and/or violations of the law and code. Amongst these are the failure:

1. to comply with provisions of the law regarding home improvement contracts and,

        2. to provide a dated and signed contract to the buyer prior to the commencement of work

Those two findings alone clearly negate Creditor's claim. Furthermore, Creditor made a grave error in the creation of the fraudulent documents submitted with the Proof of Claim. If the Court accepts these documents as valid, then it must also accept and acknowledge the note stating there was a "verbal agreement" for the $12,870.17 and an amount that looks like $20,_88.__. (See Creditor's claim Ex. A pps 27- 28). Furthermore, those same poorly transmitted documents also show that the estimated time of completion was 60 days from the start date (November 2016). Without any explanation, and since Creditor's own documents show he was paid $16,000 by Debtor's insurance company – he seems to want this Court to believe that an unemployed student (now Uber driver) made a "side" verbal arrangement to pay an additional $32,000 above the $28,000 the insurance claim would have received had he only completed the work!  1. For what? And, 2. How? Creditor was intimately familiar with Debtor's finances – and Creditor's wife was known to often ask Debtor "How are you even surviving?" Yet Creditor wants this Court to believe that although Creditor did not complete the work he agreed to do, that Debtor came back and contracted to pay another $30,000 out of her own empty pockets for. . other work? In the midst of the failed inspections and non performance.

According to Creditor's own Claim and the supporting documents thereto, Creditor not only violated the law, but he also breached his own supposed 'contract' insofar as he never completed the work, not even after seven months.

Furthermore, in April of 2017 Debtor received a Lien Waiver from Creditor, clearly showing $30,032 and a payment of $5000, leaving a balance of $25,032 and a payment of $9023.30 - leaving a balance of $16,008.61. Creditor would have been paid had he completed the project - but he did not. Creditor's own failures have been well documented. Debtor has hundreds and hundreds of notes, pictures, emails, letters, etc., documenting Creditor's breach, violations, failures and greed as he has aggressively and mercilessly pursued. He doesn't so much as have her signature on a single sheet of paper.

B. Authority to Disallow, Prohibit Modification and Award Fees and Sanctions

Further, contained within the notes regarding the amendment to Fed. R. Bankr. P. 3001(c)(1), the Rule Change Committee made the following notations: "The court retains discretion to allow an amendment to a proof of claim under appropriate circumstances or to impose a sanction **different from or in addition to** the preclusion of the introduction of evidence." Fed. R. Bankr. P. 3001(c)(1) (emphasis added). Failure to comply with Rule 3001(c) may expose the claim holder to preclusion from offering additional evidence of at a hearing and perhaps an award against it for attorneys fees and expenses. See Rule 3001(c)(2)(D).

As written, Rule 3001(c)(2)(D) provides the court with discretion in determining the appropriate response to a claimant's noncompliance with Rule3001(c). Id. (the court 'may' take ... take ... the following actions).  In determining the appropriate response in this case the Court should carefully consider the claim as submitted and amended. There is no contract, no receipts itemizing the costs of the alleged materials nothing that would withstand legal scrutiny or that is even clear to read. Not only is there not a preponderance of evidence - there isn't even a prima facie showing of anything. There is no declaration, no statement that explains what happened here. Counsel has spent an

exhaustive amount of time trying to sort through false documents and lies to uncover the truth. The claim contains whatever the opposite of a preponderance of evidence is - it is underwhelming and non existent. What was submitted is self-contradictory and/or fraudulent and illegal.

The undersigned Counsel initially accepted the validity of the original claim. Considering the standards of our profession and the possible penalty, Counsel never considered this might be a blatantly false claim – especially considering the possible penalties. "If a claim does not have *prima facie* validity, the claimant still satisfies its initial burden of proving the existence and amount of the claim with the presentation of the proof of claim, **which is signed under penalty of up to $500,000 or up to five years in prison**." (Emphasis added) I*n re Jorczak,* 314 B.R. 474, [482-]483 (Bankr. D. Conn. 2004). Never thinking a licensed attorney would submit such a perjurious document, Counsel continued to press Debtor for an explanation. She became further confused as Debtor forwarded more and more documents supporting her version.

As a matter of practice, the undersigned always initial attempts to resolve all matters amicably without incurring additional costs for financially distressed debtors. Assuming Attorney Kovalsky had been mislead by his own client, or at the very least uninformed about the fraudulently created documents, the CLSB ruling, the improperly filed and not served mechanic's lien, the payments from the insurance lien, the refusal to arbitrate, the filing of the lien being timed to stop the sale of Debtor's home, the numerous failed inspections, the mortgagee's and Debtor's numerous attempts to get Creditor to do the work, the emotional and financial turmoil Debtor was subjected to, etc. etc – Counsel made several attempts to reach Kovalsky and discuss what her research had uncovered. Counsel was appalled and surprised that not only did Attorney Kovalsky know the background facts, he'd also been Creditor's counsel throughout this ordeal - including the CSLB process (wherein the Board determined there was no contract and that Creditor abandoned the project).

Counsel painstakingly attempted to delineate the errors of Creditor's claim and urged Attorney Kovalsky to withdraw his claim. He stood before Your Honor on December 19, 2019 and promised to review and amend his claim. Again, Counsel implored Mr. Kovalsky to withdraw his claim. Counsel specifically told Kovalsky that her client could not afford to fight this claim and that he plan and income would not support any additional fees. Counsel explained that she did not intent to charge her client for the work she'd already done investigating the claim and asked he withdraw the baseless claim between estranged family members. Kovalsky replied that he needed to be paid and urged me to get my client to settle. For what? Creditor was clearly paid for the "shoddy" (as noted by CSLB) work he did do, that ultimately resulted in more costs to Debtor. Furthermore, Debtor was never to pay Creditor - the insurance company was and would have but Creditor violated every protocol and more importantly - did not do the work!

Three months later, Creditor amended its claim by only deducting approximately $11,000 - with no explanation. No additional documents were submitted, nor a statement addressing the lack of any written document or addressing any of the other numerous errors in the claim. Creditors claim is the sole reason for the continuances and delays in Debtor's case. Debtor's life has been tied up with this matter for over three years and Counsel has never seen such an egregious violation of law, policy and decency.

Both counsel and Creditor's actions in this matter are shocking. That a 'seasoned' attorney has helped facilitate the three years of harassment perpetuated on my client is unconscionable. That manufactured documents have been submitted to this Court in the perpetuation of a fraud after a State agency has already determined that no contract existed and that Debtor owes no fees is inexplicable.

CONCLUSION

Debtors objects to the claim of Claimant for the following reasons:

a) The claim is not enforceable against the Debtors and should not be allowed pursuant to 11 U.S.C. § 502(b)(1).
b) The documentation attached to Claimant's proof of claim is insufficient to support the alleged claim.
c) The documentation attached to Claimant's proof of claim fails to satisfy the requirements of FED. R. BANKR. P. 3001 and therefore the claim does not enjoy a presumption of validity.
d) As stated in the declaration attached as Exhibit "B," Debtor does not owe any money to Claimant.
e) Claimant's proof of claim fails to include any writing signed by the Debtor which is required to assert a personal liability on the debt.
f) Claimant's proof of claim includes documents submitted in furtherance of a fraud.
g) The most causal review of Creditor's documents raise significant questions

**WHEREFORE, Debtor prays that this honorable Court:**

a) disallow the claim of Claimant,

b) prohibit any supplemental paperwork from Claimant being allowed at any hearing or in any amended claim,

c) sanction Claimant,

d) award **attorneys fees of eight thousand seventy-five dollars ($8,075)** and reasonable expenses caused by Claimant's failure to provide the required information set forth in FED. R. BANKR. P. 3001 and forcing Debtor to defend this baseless claim,

e) and to grant the Debtor such other and further relief, at law or equity, to which she may be justly entitled.


DATED:    04/29/2020

/s/ Misty Wilks  
Misty Wilks  
WilksLaw

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 3818 Crenshaw Blvd., #445 Los Angeles, CA 90008

A true and correct copy of the foregoing document entitled :  OBJECTION TO CLAIM

and will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On 05/29/2016, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Kathy A Dockery (TR)
EFiling@LATrustee.com

Arnold L Graff on behalf of Interested Party Courtesy NEF
agraff@wrightlegal.net, bkudgeneralupdates@wrightlegal.net

Mark S Krause on behalf of Creditor Kinecta Federal Credit Union
bankruptcy@zbslaw.com, mkrause@ecf.courtdrive.com

Josephine E Salmon on behalf of Creditor JPMorgan Chase Bank, N.A.
ecfcacb@aldridgepite.com, JES@ecf.inforuptcy.com;jsalmon@aldridgepite.com

Valerie Smith on behalf of Interested Party Courtesy NEF
claims@recoverycorp.com

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

**2. SERVED BY UNITED STATES MAIL**:

On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 04-20-2020 | Misty Wilks | /s/ Misty Wilks |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |